IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAMELA S. McKINLEY, as Parent and
Guardian of G.M., a minor child;
MARGUERITE GARNER; VALERIE
GEORGE; EVAN D. ROBERTS; SAUNDRA
THOMPSON d/b/a Q SHOES; KRISTINE M.
BLACKMAN and PHILLIP BLACKMAN
d/b/a BLACKMAN TAEKWONDO
ACADEMY, LLC; MESA DE PLATA LLC
d/b/a JALISCO CAFÉ; SUSANA VASQUEZ
d/b/a PET FOOD GONE WILD, INC.;
TRISHA D. KEEFE; JILL M. INANNA;
DAVID G. STEPUTIS, and JOHN OR
JANE DOES 1-100,

        Plaintiffs,

v.                                                                                                   CV 20-01331 JHR/JFR

GOVERNOR MICHELLE LUJAN GRISHAM,
In Her Official Capacity as well as Individually;
PUBLIC HEALTH DIRECTOR KATHYLEEN
KUNKEL; INTERIM DIRECTOR BILLY
JIMENEZ, TRACE COLLINS, M.D.,
Secretary-Designate of NMDOH, and JANE and
JOHN DOES 1-20,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING MOTION TO INTERVENE IN PART

THIS MATTER comes before the Court on proposed Intervenor Arthur Firstenberg's Motion to Intervene as of Right [Doc. 11], filed February 3, 2021. Firstenberg also filed a Proposed Complaint in Intervention accompanying the Motion. [*Id.*, pp. 11-32]. District Judge Martha Vazquez referred this case to me "to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73" upon the joined parties' consent.

1

[Doc. 21].[1] Having thoroughly reviewed the Motion and the relevant law, the Court grants the Motion in part.

I.  **BACKGROUND**

Twelve Plaintiffs on behalf of themselves and John or Jane Does 1-100 filed a complaint on December 21, 2020 [Doc. 1], and an amended complaint on December 31, 2020 [Doc. 4]. Defendants are various New Mexico government officials and Jane and John Does 1-20. [*Id.*, p. 22]. Plaintiffs seek monetary, injunctive and declaratory relief arising from Executive Orders and Public Health Orders issued by Defendants in response to the coronavirus disease, commonly referred to as "COVID-19." [*Id.*, pp. 103-120]. In Executive Order 2020-004, Defendant Governor Michelle Lujan Grisham proclaimed a public health emergency and ordered all cabinets, departments and agencies to comply with the directives in the Executive Order and instructions given by the Department of Health. *See* N.M. Exec. Order No. 2020-004 (March 11, 2020), https://www.governor.state.nm.us/wp-content/uploads/2020/03/Executive-Order-2020-004.pdf. Governor Grisham renewed Executive Order 2020-004 multiple times through October 15, 2021. *See* N.M. Exec. Order No. 2020-054 (September 15, 2021), https://www.governor.state.nm.us/wp-content/uploads/2021/09/Executive-Order-2021-054.pdf.  In the most recent Public Health Order, the current acting New Mexico Department of Health Secretary orders "[u]nless a healthcare provider instructs otherwise, all individuals age 2 years and older shall wear a mask or multilayer cloth face covering in all indoor public settings except when eating or drinking." N.M. Public Health Order (September 15, 2021), https://cv.nmhealth.org/wp-content/uploads/2021/09/091521-PHO-Masks.pdf. Department of Health Secretaries previously set out a "Red to Green" framework

---

[1] There is some disagreement among courts as to whether motions to intervene are dispositive of a claim or defense for purposes of 28 U.S.C. § 636; however, there is authority in the Tenth Circuit that an order granting a motion to intervene is non-case dispositive. *See Angilau v. United States*, Case No. 2:15-00992-JED, 2017 WL 946068, at *1, n. 1 (D. Utah, July 27, 2017) (citing and summarizing multiple cases).

and limited operation capacities based on counties' specific COVID-19 case levels. *See e.g.*, N.M. Public Health Order (May 14, 2021), https://cv.nmhealth.org/wp-content/uploads/2021/05/NCOV-PHO-20210514-.pdf. At the highest ("red") level: "'essential businesses' identified as a 'retail space' may operate up to 25% of the maximum capacity of any outdoor or enclosed space on the premises" and "'Recreational facilities' may operate up to 25% of the maximum capacity of any outdoor space on the premises but shall not permit patrons to enter any indoor portion of the facility except for the limited purpose of using the restroom or momentarily exiting/entering." *Id*.

In this case, only Defendant Grisham and Defendant Secretary-Designate Tracie Collins have appeared before the Court. [Doc. 7]. They filed a motion to dismiss the case on January 26, 2021, which remains pending. [Doc. 8].

On February 3, 2021, Firstenberg filed a Motion to Intervene as of Right [Doc. 11], claiming he "has been harmed by the Executive Orders and Public Health Orders of Defendants … that are the subject of this action and his interests are not adequately represented by the existing parties." [*Id.*, p. 1]. Firstenberg has a doctor's letter stating that a "severe, chronic sinus condition" prohibits him from wearing a mask. [*Id.*, pp. 2, 5; *Id.*, Exhibit ("Ex."), A (p. 10)]. He alleges that, despite his doctor's letter, he has been physically and verbally assaulted by citizens and banned from the Santa Fe Farmers Market for not wearing a mask. [Doc. 11, pp. 2, 13-14]. He asserts that masks are not just ineffective but harmful to all who wear them. [*Id.*, p. 2].

Firstenberg also claims economic injury by loss of access to public computers through which he was accustomed to run his business, [Doc. 11, p. 2], because "Defendants' Orders have shut down all libraries, government buildings, senior centers and other locations that have public

3

computers." [*Id.*, pp. 4-5]. Firstenberg seeks seven forms of relief, some distinct and some the same as existing plaintiffs. [*See id.*, pp. 24-32].

All existing parties oppose Firstenberg's Motion. [Doc. 11, p. 3]. Defendants filed a response on February 17, 2021 [Doc. 18], challenging Firstenberg's standing and positing that his injuries were caused by third parties and cannot be redressed in an action against Defendants. [*Id.*, pp. 5-6]. Firstenberg replied to Defendants on March 2, 2021 asserting that Defendants' coercion of the public was the cause of the third parties' actions. [Doc. 24, pp. 2-3]. He says that an injunction against Defendants' orders and "requiring Defendants to tell the public the truth about masks" will redress his injuries. [*Id.*, pp. 4-5]. Regarding loss of access to public computers, Firstenberg argues that "he is alleging that public WiFi computers are no longer available *anywhere in Santa Fe, at any price*." [*Id.*, p. 5] (emphasis in original). He adds that "contrary to the contention of Defendants, Santa Fe's Public Libraries and Senior Centers are divisions of City government and political subdivisions of this State and by the terms of Defendants' order they are required to comply with and enforce those orders." [*Id.*, p. 6].

Plaintiffs filed a response to Firstenberg's Motion on February 26, 2021 [Doc. 23], arguing that Firstenberg's state law claims will delay the case or cause other unspecified prejudice. [*Id.*, pp. 3-4]. Plaintiffs also dispute whether Firstenberg has shown "how, without his intervention, this suit would impede his ability to protect his interest." [*Id.*, p. 2]. Plaintiffs cite a previous version of Rule 24 to argue application of *res judicata*. [*Id.*, p. 3]. Firstenberg replied to Plaintiffs' arguments on March 2, 2021 [Doc. 25].

## II.     STANDING REQUIREMENT FOR INTERVENORS

Article III of the United States Constitution limits the jurisdiction of federal courts to "[c]ases" and "[c]ontrovers[ies]." U.S. Const. art. III, § 2. For intervenors, the Tenth Circuit previously had a "piggyback standing" rule whereby parties seeking to intervene under Rule 24(a) or (b) did not need to establish Article III standing so long as another party with constitutional standing on the same side as the intervenor remained in the case. *Kane Cty., Utah v. United States*, 928 F.3d 877, 886 (10th Cir. 2019) (citing *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1172 (10th Cir. 2007) (en banc)). In 2017, the Supreme Court held that an intervenor as of right must meet the requirements of Article III standing if the intervenor wished to pursue relief not requested by an existing party. *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1648 (2017). The basis for this holding was that for each forms of relief sought, there must be a litigant with standing, whether that litigant joined the lawsuit as a plaintiff, a coplaintiff or an intervenor of right. *Id.* at 1651. The *Town of Chester* Court considered separate money judgments in separate names to be different forms of relief. *Id.* at 1651. The Tenth Circuit considers *Town of Chester* to be a modification to the "piggyback standing" rule applicable only when the intervenor demands distinct relief. *See Kane Cty.*, 928 F.3d at 887; *see also Sierra Club v. Entergy Arkansas LLC*, 503 F.Supp.3d 821, 850 (E.D. Ark. 2020). To the extent that an intervenor seeks to pursue the same forms of relief, the "piggyback standing" rule still applies.

Firstenberg seeks relief that is both the same as and distinct from the demands of Plaintiffs. [*See* Doc. 11, pp. 24-32; Doc. 4, pp. 103-120]. Firstenberg and existing Plaintiffs are aligned in their demands for injunctions against the mask wearing mandates. [*See* Doc. 11, pp. 30, 32; Doc. 4, pp. 101-06]. Firstenberg, however, raises state law claims under the New Mexico Constitution and the New Mexico Human Right Act, [*see* Doc. 11, pp. 25-28, 31-32], claims not raised by

5

existing Plaintiffs. [*See* Doc. 23, p. 3]. He also seeks monetary damages for himself. [*See* Doc. 11, pp. 30, 32]. To the extend Firstenberg seeks distinct relief, he must establish standing.

### III.  STANDING

Article III standing requires a litigant to show: (1) a concrete and particularized injury that is actual or imminent ("injury in fact"); (2) a sufficient causal connection between the injury and the challenged action; and (3) a likelihood that the injury will be redressed by a favorable ruling. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014).

####    a.  Injury in Fact

The purpose of the injury in fact requirement is to ensure that the litigant has a personal stake in the litigation; the mere presence of an unconstitutional statute on the books by itself does not establishing standing. *See Driehaus*, 573 U.S. at 158; *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006). A litigant must establish a concrete and particularized injury that is actual or imminent. *See Driehaus*, 573 U.S. at 158.

Firstenberg alleges that he has suffered from citizens and businesses discriminating against him for not wearing a mask, assaulting him and "prevent[ing] him [] from buying food and clothing and obtaining essential services." [Doc. 11, pp. 2, 4]. Firstenberg also claims economic injury by loss of access to public computers where he was accustomed to run his business. [*Id.*, p. 2]. Neither Plaintiffs nor Defendants challenge Firstenberg's injury in fact requirement, and these injuries facially appear actual, concrete and particularized. Therefore, Firstenberg has satisfied the injury in fact requirement.

b. **Causation**

Article III standing requires a plaintiff's injury be fairly traceable to the challenged action of a defendant and not the result of the independent action of some third party not before the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).

Several courts have addressed the causation requirement regarding COVID-19 orders. The court in *Lawrence v. Colorado* held that state and municipal COVID-19 orders did not have a chilling effect on in-person religious gatherings because the plaintiff presented no evidence that churches were declining to hold services for fear of repercussion from authorities. 455 F.Supp.3d 1063, 1072-73 (D. Colo. 2020). There was contravening evidence that the plaintiff's church cancelled its service out of concern for the well-being of their congregants rather than fear of government punishment. *Id.*

In *Shelton v. City of Springfield,* the plaintiff alleged hypothetical harassment by businesses and others for failure to comply with a mask mandate even though she was exempt from the order due to medical conditions. 497 F.Supp.3d 408, 410-11 (W.D. Mo. 2020). The court held that, even if the injuries were not hypothetical, the plaintiff's alleged fears were still not traceable to the defendant but to businesses or others requiring face coverings in disregard of the exemption. *Id.* at 413.

In *Beaudoin v. Baker*, the plaintiff alleged that he suffered harm because businesses denied him entry without a face covering and individuals refused to remove their own face coverings to communicate with him[2] even though he was exempt from the COVID-19 order. No. 20-1187-NMG, 2021 WL 1162927, at *2, 5 (D. Mass. Mar. 25, 2021). The court held that the injuries were not fairly traceable to the governor's conduct because they depended too heavily on the

---

[2] The plaintiff alleged that he was hearing impaired and relied on reading lips to understand others. *Beaudoin*, 2021 WL 1152927, at *2.

independent action of third parties. *Id* at \*5. The court found that the harm the plaintiff suffered could not be ascribed to the governor because governor's order did not include public chastisement of violators, and poor behavior of members of the society could not be imputed to governor's orders. *Id*.

### i) Mask Mandate

Firstenberg alleges that third parties, including customers and an employee in a UPS store and the Santa Fe Farmers' Market, have denied him services because he was not wearing a mask and that their actions were the result of coercion by Defendants. [Doc. 11, pp. 4, 12-14; Doc. 24, p. 2]. He alleges that UPS store customers yelled and charged him, and a UPS store employee threw him out of the store, all for not wearing a mask. [Doc. 11, p. 13]. However, as in *Beaudoin*, there is nothing in Defendants' orders that requires the public chastisement of violators, and poor behavior of community members at the UPS store cannot be imputed to Defendants through the orders.

Firstenberg alleges that Santa Fe Farmers' Market banned him for not wearing a mask. [Doc. 11, p. 13]. In a letter to Firstenberg, the Market's stated "our market policy" is to require everyone to wear some types of face coverings, representing that the policy is in accordance with the Governor's order. [*Id.*, Ex. B (p. 34)]. To the contrary, Defendants' orders explicitly provide an exception if "a healthcare provider instructs otherwise," and Firstenberg allegedly obtained such an exemption[3] and so was not required by the terms of Defendants' orders to wear a mask. *See* N.M. Public Health Order (August 17, 2021). In its letter, the Market acknowledged that some customers may choose not wear a mask due to medical conditions but, instead of providing these customers with unfettered access, the Market offered alternative access to Market products. [*See*

---

[3] The Market also questioned the validity of Firstenberg's doctor's note. [*See* Doc. 11, p. 35].

8

Doc. 11, Ex. B (p. 34)]. Firstenberg provides no showing that the Market banned him out of fear of government punishment; rather, the Market's letter states that the ban was imposed by unanimous vote of the Market's Board of Directors "[b]ecause of your hostile and intimidating behavior toward market staff." [*Id.*]. As Defendants' orders exempt Firstenberg and the Market's motivation was not fear of government punishment, the Market's action is not fairly traceable to Defendants.

*Hernandez v. Grisham*, 499 F.Supp.3d 1013, 1049-55 (D.N.M. 2020), holding that parents had standing to challenge the Governor's orders regarding school reentry, is distinguished by evidence that the governor had a heavy involvement in the State's education policy before and during the pandemic, that by virtue of her office she had some connection with the reentry guidance, and that the Public Education Department continuously collaborated with the Office of the Governor to evaluate science-based criteria for deciding whether, when, and to what extent to reopen schools. *Id.* at 1049, 1052. No such specific evidence connects Defendants and the actors accused by Firstenberg.

*Mink v. Knox,* 613 F.3d 995 (10th Cir. 2010), cited by Firstenberg, [Doc. 24, p. 3], is particular to the "causes to be subjected" requirement of 42 U.S.C. § 1983 rather than the requirements of Article III standing. *See Mink*, 613 F.3d at 1001. Firstenberg offers no persuasive argument, and the Court does not conclude, that the §1983 causation requirement should be applied here.

### ii) Public Computers

Firstenberg alleges that Defendants' orders have shut down all libraries, government buildings, senior centers and other locations that have public computers. [Doc. 11, pp. 4-5]. Firstenberg also alleges that the UPS store does not allow access without a mask and that FedEx

9

Office limits the public to two 30 minutes session per day. [*Id.*, p. 14]. However, Firstenberg does not allege that UPS and FedEx impose their limitations for fear of government punishment. Defendants issued their first orders in March 2020, and FedEx only recently adopted their policy of two 30 minutes sessions per day. [*See id.*]. The new policy is not shown to be the result of Defendants' orders. Therefore, FedEx and UPS' actions are not fairly traceable to Defendants.

Regarding government buildings, senior centers and public libraries, Defendants' order does not shut down any specific buildings or libraries, *see e.g.* N.M. Public Health Order (May 14, 2021), but categorizes "essential businesses" and others and imposes categorical restrictions, adding that "[n]othing in this Order is intended to restrain or preempt local authorities from enacting more stringent restrictions than those required by the Order." *Id.* Firstenberg does not identify nor challenge specific categorizations nor occupancy restrictions. He provides no evidence regarding whether the relevant buildings were closed because of Defendants' orders or for other reasons. Unlike *Hernandez*, there is no specific evidence that public governmental buildings collaborated directly with the governor's office in deciding to close, *cf.* 499 F.Supp.3d at 1049, 1052; therefore, Firstenberg has not shown the closure of all government buildings providing public computer access to be fairly traceable to Defendants.

For the above reasons, Firstenberg has not satisfied the causation requirement.

    **c. Redressability**

For redressability, a party must establish it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 561.

Several courts have examined the redressability requirement in the context of COVID-19 orders. *Lawrence* held that the plaintiff's injury was not redressable by an injunction because an

injunction against the governor's orders would not force the plaintiff's church to provide public mass. 455 F.Supp.3d at 1072-73.

In *Park v. Wolf*, plaintiffs alleged that wearing a mask is itself harmful. 506 F.Supp.3d 271, 287 (M.D. Pa. 2020). The court held that the mask mandate was not redressable because an injunction against the mask order would not have any impact on local businesses, schools, or places of worship that required masks without the threat of state enforcement. *Id.* at 288. It would also not impact local municipalities from enacting or creating new mask mandates. *Id*.

In *Delaney v. Baker*, where the plaintiff only alleged an indirect injury and there was no evidence that the plaintiff's church instituted its COVID-19 protocol only because of the governor's orders, the court found against redressability and found, even had it the church been motivated by the order, there was no evidence that a favorable ruling would redress the alleged injury. 411 F.Supp.3d 55, 70 (D. Mass. 2021).

Similarly, in *Cangelosi v. Edwards*, the court stated that owners of private businesses might disagree with the plaintiff about the efficacy of face coverings. CIVIL ACTION No: 20-1991, 2020 WL 6449111, at *4 (E.D. La. Nov. 3, 2020). Even if the court enjoined enforcement of mask mandate, those business owners could very well continue to require the plaintiff to don a face covering before entering their premises. *Id.* Therefore, the proposition that an injunction against the governor would relieve the plaintiff of having to wear a face covering was highly speculative. *Id.*

      **i)**       **Mask Mandate**

Firstenberg asserts that an injunction against the mask requirement and "requiring Defendants to tell the public the truth about masks" will redress his injuries. [Doc. 11, pp. 3-4]. Exercising judicial authority to control official government action is not a guarantee of particular

conduct by individuals and entities who are not parties to this case. *See Henry,* 461 F.Supp.3d at 1253 (citing *Arizonans for Official English*, 520 U.S. at 66). As illustrated by the above cases, it is highly speculative that an injunction against government coercion will stop third parties from requiring masks since third parties may require masks even without the threat of state enforcement. Firstenberg assumes that an injunction requiring Defendants to "tell the truth" about masks will stop third parties from requiring masks. This is a complex issue that depends on what the "truth" is about masks and whether it is a court's role to compel speech by executive officers. Even assuming *arguendo* that Defendants are ordered to "tell the truth" about masks, whatever it may be, it is still highly speculative that third parties will act differently. Businesses may think face coverings are useful, for example, based on information from the Center for Disease Control, public news, or other countries. *See Cangelosi*, 2020 WL 6449111, at *4.

Firstenberg's own allegation, that individuals and entities are denying him the benefit of Defendants' express exemption from masking when "a healthcare provider instructs otherwise" demonstrates that the judicial action he demands is disconnected from the relief that he seeks. Plaintiffs in *Hernandez* satisfied the redressability requirement because the secretary of education testified that if the governor instructed the secretary to amend the reentry guidance, the secretary would do so. 499 F.Supp.3d at 1053. The analog for this case would be evidence that, if the Court ordered State officials to act differently, private third parties would stop disregarding State policy. Firstenberg has not shown that result to be anything but speculative.

Therefore, Firstenberg's injuries from the mask mandate are not redressable.

### ii) Public Computers

Similarly, an injunction on Defendants' orders and requiring "the truth" about masks will not redress Firstenberg's injury as to public computers. Once again, nonparties are not bound by a

courts' orders. *See Henry v. DeSantis,* 461 F.Supp.3d 1244, 1253 (S.D. Fla. 2020) (citing *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 (1997)). Firstenberg assumes that third parties will accommodate him in response to an injunction against Defendants. He has not shown, however, that facilities have enacted the limits he complains of only because of Defendants' orders or statements, or that they are required to do so. Those third parties may have other reasons for their restrictions. As noted, Defendants entered their first orders in March 2020, and FedEx only recently limited its access to two 30 minutes sessions per day. [*See* Doc. 11, pp. 12, 14]. There is no persuasive temporal relation between the two events. It is highly speculative that FedEx will lift its mandate with an injunction on Defendants' orders. Private businesses may still limit access based on information from other sources.

For public buildings, Defendants' orders do not direct to any specific buildings to close or limits hours of operation, and Firstenberg has not shown that they will open if Defendants direct them to do so. *Cf. Hernandez*, 499 F.Supp.3d at 1053. Defendants' orders have stated that "[n]othing in this Order is intended to restrain or preempt local authorities or state agencies from enacting more stringent restrictions", suggesting that they could do so under their own authority. *See e.g.* N.M. Public Health Order (August 17, 2021); N.M. Public Health Order (May 14, 2021). An injunction against Defendants will not prohibit local municipalities from enacting or creating new mandates. *See Park*, 506 F.Supp.3d at 288. Because third parties are not before the Court, and it is highly speculative that services will open enough to redress Firstenberg's injuries if the Court enjoins the orders, this injury is not redressable.

In conclusion, Firstenberg does not satisfy the causation and the redressability requirements of standing to pursue distinct relief not requested by an existing party.

## IV.     INTERVENTION AS OF RIGHT

Under Rule 24(a)(2), a nonparty seeking to intervene as of right must establish 1) timeliness, 2) an interest relating to the property or transaction that is the subject of the action, 3) the potential impairment of that interest, and 4) inadequate representation by existing parties. Fed. R. Civ. P. 24(a); *W. Energy All. V. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017).[4] The Tenth Circuit has historically taken a liberal approach to intervention and thus favors the granting of motions to intervene. *Zinke*, 877 F.3d at 1164. In addition, the requirements for intervention may be relaxed in cases raising significant public interests. *Kane Cty.*, 928 F.3d at 890. The movant bears the burden of establishing its right to intervene. *United States v. City of Albuquerque*, 2020 WL 3129825, at *43 (D.N.M. June 12, 2020) (citing *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 414 (5th Cir. 1991)).

### a.  Timeliness

The timeliness of a motion to intervene is assessed in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances. *Kane Cty.*, 928 F.3d at 890-91.

Firstenberg moved to intervene on February 3, 2021 after Plaintiffs filed the complaint on December 21, 2021. [*See* Docs, 1, 11]. Given how early in the lawsuit Firstenberg moved to intervene and, as a result, the lack of prejudice to the existing parties, Firstenberg satisfies the timeliness requirement. *See Zinke*, 877 F.3d at 1165.

---

[4] Plaintiffs cite to a 1964 Tenth Circuit case, *Degge v. City of Boulder, Colo.*, in support of a *res judicata* test. [Doc 23, p. 3]; 336 F.2d 220 (10th Cir. 1964). However, Rule 24(a)(2) and (a)(3) were modified in 1966, and Plaintiffs do not explain, nor does the Court finds *Degge* applicable under the current formulation. *See* Fed. R. Civ. P. Rule 24 advisory committee's note (1966).

Plaintiffs argue that that Firstenberg's state law claims will delay the case or cause other prejudice. [Doc. 23, pp. 3-4]. The Court finds that Firstenberg lacks standing to pursue distinct forms of relief and directs Firstenberg to amend his Complaint in Intervention. Therefore, this argument is now moot.

### b. Interest in the Subject of the Lawsuit

A protectable interest is one that would be impeded by the disposition of the action. *Zinke*, 877 F.3d at 1165 (citing *San Juan Cty*, 503 F.3d at 1203) (en banc)). The interest requirement is a highly fact-specific determination. *Id*. (citing *Coal. Of Ariz./New Mexico Ctys. For Stable Econ. Growth*, 100 F.3d 837, 741 (10th Cir. 1996)).

Firstenberg's interest in this matter stems from the fact that Defendants' orders apply to the entire state of New Mexico. *See* N.M. Public Health Order (August 17, 2021). Here, neither of the opposing parties fully developed their arguments against Firstenberg's interest requirement. Even though the orders exempt a person whose "healthcare provider instructs otherwise," Firstenberg may still suffer the social stigma and other collateral consequences caused by the orders. [*See* Doc. 11, pp. 2, 4]. Even though the Court rules that Firstenberg lacks independent standing, Rule 24(a)(2) only requires "an interest *relating* to the property or transaction which is the subject of the action." *See Kane Cty.*, 928 F.3d at 892 (citing *San Juan Cty*, 503 F.3d at 1200) (emphasis in original). Because this case involves significant public interest, the Tenth Circuit has historically taken a liberal approach to intervention, and neither the opposing parties fully developed their arguments against Firstenberg's interest requirement, the Court finds that Firstenberg has demonstrated a sufficient interest relating to the subject of the lawsuit notwithstanding that he may be personally exempted from Defendants' mask mandate.

### c. Interest may be Impaired or Impeded

Rather than a certainty, a prospective intervenor must show it is "possible" that the movant's identified interests will be impaired. *Zinke*, 877 F.3d at 1167. This burden is minimal and the potential impairment may be contingent upon the outcome of litigation. *Id.*; *Kane Cty.*, 928 F.3d at 891.

Here, if the Court upheld Defendants' orders, Firstenberg may continue to suffer the social stigma and other collateral consequences he alleged in his Complaint in Intervention. [*See* Doc. 11, pp. 13-14]. He thus satisfies the minimal burden to show that his interest may be impaired by the disposition of this action.

### d. Inadequate Representation by Existing Parties

Lastly, the potential intervenor must show that existing parties may not represent its interest. *Kane Cty.*, 928 F.3d at 892. This burden is also minimal, and it is enough show that the existing representation may be inadequate. *Id.* The possibility of divergence of interests may satisfy the inadequacy requirement, and this possibility of divergence of interest need not be great. *Id.* at 894; *Zinke*, 877 F.3d at 1168.

When a would-be intervenor's and the representative party's interests are identical, courts presume adequate representation. *Kane Cty.*, 928 F.3d at 892. However, the interests of intervenors and parties are not necessarily identical under Rule 24(a)(2) just because they pursue the same forms of relief. *Id.* at 887, n. 13.

To illustrate, intervention was allowed in *Wildearth Guardians v. Bernhardt* where two parties both represented oil and gas companies and shared general interests. No. 1:19-cv-00505-RB-SCY, 2020 WL 672836, at *4 (D.N.M. Feb. 11, 2020). One party represented only smaller exploration and production companies whereas the other party represented the gamut of the oil

and gas industry. *Id.* Because the two parties may have had different objectives, the court granted the motion to intervene.

Similarly, in *Klitzke v. DCP Midstream, LLC*, even though both the intervenor and the plaintiff sought significant financial awards, their motives were distinct. *See* 2020 WL 6546727, at *3 (D. Colo. Nov. 6, 2020). The *Klitzke* court found this difference in motivation enough to meet the minimal burden of inadequate representation requirement. *Id.*

Here, Firstenberg has a doctor's note and is allegedly exempt from Defendants' orders. [*See* Doc. 11, p. 2]. Firstenberg might pursue different strategies and arguments throughout the litigation to assure that exemptions are available and effective even if restrictions survive. Because the intervenor's burden is minimal, the divergence of interests required is not great, and the Tenth Circuit has historically taken a liberal approach, the Court finds Firstenberg's interest different enough from other Plaintiffs to permit intervention.

Because the Court finds that Firstenberg satisfies the 24(a)(2) requirements, Firstenberg has a right to intervene to the extent he seeks the same forms of relief as Plaintiffs.

## V.     CONCLUSION AND ORDER

For the above reasons, the Court grants Firstenberg's motion to intervene in part. It is hereby ordered that:

1) Firstenberg must amend his Complaint in Intervention, within 14 days of entry of this Order, consistent with this Order.

2) Firstenberg may file a response to Defendants' Motion to Dismiss [Doc. 8] within 14 days of entry of this Order. Defendants' reply will be due 14 days after service of the response.

Because Firstenberg has not consented to the undersigned Magistrate Judge as the trial judge in this matter, and the Court grants Firstenberg's motion to intervene in part, the parties are advised that:

3) the Clerk will reassign this matter to a district judge as the trial judge no later than **10 days** from the entry of this Order unless consents from **all parties** (including Firstenberg) have been filed. The parties are free to withhold consent. Parties who have already consented need not resubmit.

The Court will consider conducting a hearing on the Motion to Dismiss [Doc. 8] after the consent deadline and after completion of briefing.

**IT IS SO ORDERED.**

_____
JERRY H. RITTER
U.S. MAGISTRATE JUDGE
*Presiding by Consent*