IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PAMELA S. McKINLEY, as Parent and
Guardian of G.M., a minor child;
MARGUERITE GARNER; VALERIE
GEORGE; EVAN D. ROBERTS; SAUNDRA
THOMPSON d/b/a Q SHOES; KRISTINE M.
BLACKMAN and PHILLIP BLACKMAN
d/b/a BLACKMAN TAEKWONDO
ACADEMY, LLC; MESA DE PLATA LLC
d/b/a JALISCO CAFÉ; SUSANA VASQUEZ
d/b/a PET FOOD GONE WILD, INC.;
TRISHA D. KEEFE; JILL M. INANNA;
DAVID G. STEPUTIS, and JOHN OR
JANE DOES 1-100,

        Plaintiffs,

v.                                                                                    CV 20-01331 JHR/JFR

GOVERNOR MICHELLE LUJAN GRISHAM,
In Her Official Capacity as well as Individually;
PUBLIC HEALTH DIRECTOR KATHYLEEN
KUNKEL; INTERIM DIRECTOR BILLY
JIMENEZ, TRACE COLLINS, M.D.,
Secretary-Designate of NMDOH, and JANE and
JOHN DOES 1-20,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' AMENDED COMPLAINT [Doc. 8] IN PART

THIS MATTER comes before the Court on Defendants Governor Michelle Lujan Grisham and Secretary-Designate Tracie Collins' Motion to Dismiss Plaintiffs' Amended Complaint [Doc. 8], filed January 26, 2021. U.S. District Judge Martha Vazquez referred this case to me "to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73" upon the joined parties' consent. [Docs. 21, 32]. Having thoroughly reviewed the Motion and the relevant law, the Court grants the Motion in part.

1

## I.    **BACKGROUND**

Twelve Plaintiffs on behalf of themselves and John or Jane Does 1-100 filed a complaint on December 21, 2020 [Doc. 1], and an amended complaint on December 31, 2020 [Doc. 4]. Defendants are various New Mexico government officials and Jane and John Does 1-20. [*Id.*, p. 22]. Plaintiffs claim multiple violations of constitutional rights arising from Executive Orders and Public Health Orders issued by the Governor, the past Public Health Director, and the current interim acting Public Health Director in response to the coronavirus disease ("COVID-19"). [*Id.*, pp. 103-120].

The formal claims made by Plaintiffs are described as:

Count 1: "Injunctive relief to enjoin the use of PCR tests results as the basis for determining public health responses and restrictions until and unless it is proven by Defendants that this test is reliable and accurate at the cycle thresholds being used in New Mexico." [*Id.*, p. 103].
Count 2: "Declaratory Relief – That the exigencies underlying the declaration for emergency no longer exist if they ever did; and in the absence of a public health emergency, the state lacks any reason to continue to infringe on citizens' rights, thereby nullifying all current executive and public health orders which flowed from the declaration of emergency." [*Id.*].
Count 3: "Declaratory Relief that All actions taken under Public Health Orders issued pursuant to Executive Order 2020-004 and extensions are no longer valid as being based on falsely inflated numbers that do not represent the true character of the disease." [*Id.*, p. 105].
Count 4: "Declaratory Relief in Declaring the Lowest Standard of Review Available under an Emergency Declaration is Intermediate Scrutiny though Higher Standards May Still Apply." [*Id.*, p. 106].
Count 5: "Takings Without Just Compensation." [*Id.*, p. 111].
Count 6: "Declaratory Relief that the Restrictions on Gatherings at Houses of Worship are Unconstitutional." [*Id.*, p. 112].
Count 7: "Declaratory Relief That the Limitations on Gatherings of People are Unconstitutional." [*Id.*].
Count 8: "Overview of Constitutional Violations Not Discussed Elsewhere" – "The Freedom of Movement & Interstate Travel has been ignored – Fundamental Right to Travel" – "Second Amendment, Right to Bear Arms has been interfered with" – "The Right to Work has been abridged[.]" [*Id.*, pp. 113-15].
Count 9: "Permanent injunction against future public health emergencies for more than an extremely limited period of time without regular reauthorization by the legislative body should be granted." [*Id.*, p. 118].

Count 10: "Damages should be granted for Plaintiffs in an amount determined appropriate by the finder of fact pursuant to 42 U.S. Code § 1983." [*Id.*, p. 120].

Defendants Governor Lujan Grisham and Secretary-Designate Collins filed a motion to dismiss the case on January 26, 2021, raising twelve different grounds for dismissal. [Doc. 8]. Plaintiffs responded on February 17, 2021, and Defendants replied on March 23, 2021. [Docs. 18 and 28]. The Court granted Intervenor Arthur Firstenberg's motion to intervene in part and allowed him to respond to the Motion to Dismiss. [*See* Doc. 31]. Firstenberg responded on October 1, 2021, and Defendants replied on October 15, 2021. [Docs. 35, 40].

## II.    <u>STANDARD OF REVIEW</u>

Defendants seek dismissal under Rule 12(b)(1) for lack of standing and lack of jurisdiction and under Rule 12(b)(6) for failure to state a claim. [Doc. 28, pp. 2-3; *see generally* Docs. 8, 28]. Defendants clarify that they "are only making a facial challenge at this time." [Doc. 28, p. 3].

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may seek dismissal of a lawsuit for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Rule 12(b)(1) motions generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citing *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995)). Where a Rule 12(b)(1) motion constitutes a facial jurisdictional attack, courts presume all of the factual allegations in the complaint are true. *Id. See Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) ("It is fundamental, of course, that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal must be without prejudice.") (quoted authority and internal alterations omitted). A dismissal for lack of jurisdiction based on standing is without prejudice. *See Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) ("It is fundamental, of course, that a dismissal for lack of jurisdiction is not

an adjudication of the merits and therefore dismissal must be without prejudice.") (quoted authority and internal alterations omitted); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("Since standing is a jurisdictional mandate, a dismissal with prejudice for lack of standing is inappropriate, and should be corrected to a dismissal without prejudice.") (internal citation omitted).

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) requires the Court to accept all well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). The complaint must set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief. *Id.* at 570. A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III.   <u>ANALYSYIS</u>

#### a. STANDING

Before attacking specific claims, Defendants seek dismissal of the entire complaint based on lack of standing. [Doc. 8, pp. 9-11]. In federal cases, a party bringing suit bears the burden to establish standing; that burden is met by showing: (1) a concrete and particularized injury that is

actual or imminent; (2) a sufficient causal connection between the injury and the challenged action; and (3) a likelihood that the injury will be redressed by a favorable ruling. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014).

### i.  Non-Parties' Actions

Defendants ask the Court to dismiss "claims[] which are the result of independent actions of third parties and not likely to be redressed by any favorable decision." [Doc. 8, p. 10 (bracketed omission supplied)]. Defendants do not specifically identify which claims arise from third-party action but instead give an example and then propose "[e]ven a cursory review of Plaintiffs' allegations demonstrates that Plaintiffs' claims largely emanate from the actions of non-parties to this action." [*Id.*].

Article III standing requires a plaintiff's injury to be fairly traceable to the challenged action of a defendant and not the result of the independent action of some third party not before the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992). A plaintiff must prove at least a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact. *See Hernandez v. Grisham*, 499 F. Supp. 3d 1013, 1050 (D.N.M. 2020). Not all non-parties' actions are "independent actions." For example, in *Hernandez*, the court held that parents of certain students had standing to sue the governor regarding a school's reentry guidance because the governor was heavily involved in creating the guidance. *See id*. at 1052.

For redressability, a party must establish that it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan*, 504 U.S. at 561. Some claims resulting from non-parties' actions are redressable. The *Hernandez* court held that a decision against the governor would likely redress plaintiffs' injuries because the governor "has the ability to re-open schools for in-person instruction." *Hernandez*, 499 F. Supp. 3d at 1053-54.

Defendants not only fail to identify which claims are the result of non-parties' actions but also do not explain why specific claims fail causation or redressability other than that they are the result of non-party actions. [Doc. 8, pp. 9-10]. Non-party actions do not categorically fail causation and redressability and Defendants do not explain how Plaintiffs' fail to show "substantial likelihood" of traceability to Defendants nor how redressability is not likely but merely speculative. The Court is not an advocate for either party and cannot, given a general challenge, craft its specific form. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Based on the arguments presented, the Court cannot dismiss Plaintiffs' claims allegedly arising from non-party actions.

### ii. General Grievances

Defendants argue that "Plaintiffs' claims must also be dismissed to the extent that they are mere[ly] generalized grievances about the hardships of living during a pandemic and being subject to restrictions allegedly based on false information." [Doc. 8, p. 10].

To establish Article III standing, plaintiffs must allege a "concrete and particularized" injury. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157-58 (2014). Mere statement of a generally available grievance about the government does not show standing. *Lujan*, 504 U.S. at 573-74.

Defendants do not adequately identify which claims are "generalized grievances." [*See* Doc. 8, pp. 10-11]. It is not obvious which claims are "generalized grievances." Again, the Court is not an advocate for either party. Without Defendants' identification of vulnerable claims and individualized legal arguments in support, the Court cannot identify to what extent Plaintiffs' claims are based on "generalized grievances." Therefore, the Court does not dismiss any claim based on its "general" character.

### b. FORMAL CLAIMS

To analyze Plaintiffs' claims by type, the Court will address them out of numerical order.

### i. Counts 2, 3, and 9

On March 11, 2020, the Governor issued Executive Order 2020-004 proclaiming "a public health emergency in accordance with NMSA 1978, 12-10A-5 of the Public Health Emergency Response Act" and ordering all cabinets, departments and agencies to comply with the directives in the Executive Order and instructions given by the Department of Health. *See* N.M. Exec. Order No. 2020-004 (March 11, 2020), https://www.governor.state.nm.us/wp-content/uploads/2020/03/Executive-Order-2020-004.pdf. This Executive Order was renewed multiple times. *See e.g.* N.M. Exec. Order No. 2020-054 (September 15, 2021), https://www.governor.state.nm.us/wp-content/uploads/2021/09/Executive-Order-2021-054.pdf. The Secretary of the New Mexico Department of Health subsequently issued several Public Health Orders requiring masks and limiting operating capacities of businesses. *See e.g.* N.M. Public Health Order (September 15, 2021), https://cv.nmhealth.org/wp-content/uploads/2021/09/091521-PHO-Masks.pdf; N.M. Public Health Order (May 14, 2021), https://cv.nmhealth.org/wp-content/uploads/2021/05/NCOV-PHO-20210514-.pdf.

In counts 2, 3 and 9, Plaintiffs ask the Court to declare that the public health emergency no longer exists and the public health orders are no longer valid, and to order limitations on future declarations of public health emergencies. [Doc. 4, pp. 103, 105, 118; *see supra* pp. 2-3].

The Eleventh Amendment provides that the power of federal courts "shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. A State's sovereign immunity is not limited to the literal terms of the Eleventh Amendment and "an unconsenting State also is immune from

suits by its own citizens." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004). "[A]bsent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254 (2011). Where a plaintiff nominally sues only state officials, the Eleventh Amendment bars suit if the State is the real, substantial party in interest and regardless of whether the suit seeks damages or injunctive relief. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984). *Pennhurst*, under federalism principles, also bars federal courts from enjoining state officials under state law. *Id*. For example, in *Denver Bible Church v. Azar*, the court observed that claims that Colorado's executive orders violated the Colorado Constitution and Colorado Disaster Emergency Act are likely barred by the Eleventh Amendment. 494 F. Supp. 3d 816, 840 (D. Colo. 2020).

The Governor declared a public health emergency pursuant to a state statute, NMSA 1978, § 12-10A-5 (2003) (New Mexico Public Health Emergency Response Act). *See* N.M. Exec. Order No. 2020-004 (March 11, 2020). Plaintiffs ask the Court to find that the declaration is no longer valid and to limit state officials from declaring future public health emergencies under a state statute. Plaintiffs do not allege any federal basis for this relief, and the issue of whether a public health emergency exists under the New Mexico Public Health Emergency Response Act is a question of state law. Essentially, Plaintiffs are asking the federal court to instruct state officials how to conform their conduct to state law. These are precisely the types of issues identified by *Pennhurst* that create a conflict with principles of federalism. *See* 465 U.S. at 102.

Plaintiffs would have the Court analogize this case to *Home Building & Loan Assn. v. Blaisdell*, 290 U.S. 398 (1934), and *Chastleton Corp. v. Sinclair*, 264 U.S. 543 (1924). They are distinguishable. Neither *Blaisdell* nor *Sinclair* addressed the principles of federalism. If the question of whether an exigency persists is open to judicial inquiry, *Blaisdell* and *Sinclair* do not

recognize federal authority to second-guess a state declaration of a public health emergency under state statute.

Counts 2, 3 and 9 will be dismissed without prejudice based on sovereign immunity. *See Clark v. N.M. Dept. of Corr.*, 58 F. App'x 789, 791 (10th Cir. 2003) ("The court properly dismissed the claims [based on the Eleventh Amendment], but they should have been dismissed without prejudice.").

### ii. Count 4

Plaintiffs propose in Count 4 that that the Court declare that the lowest standard of judicial review for all emergency declarations is intermediate scrutiny. [Doc. 4, p. 106]. Defendants object that a constitutional standard of review cannot be determined abstractly but requires a context of a discrete and actual claim of injury. [Doc. 8, p. 13].

Article III of the United States Constitution limits the jurisdiction of federal courts to "[c]ases" and "[c]ontrovers[ies]." U.S. Const. art. III, § 2, cl. 1. Courts cannot act in the absence of an actual dispute between adverse litigants and a substantial likelihood that a decision in favor of a claimant will bring about some change or have some effect. Ervin Chemerinsky, *Constitutional Law Principles and Policies* 54-56 (6th ed. 2019) (citing Henry Melvin Hart, David L. Shapiro & Daniel J. Meltzer, *Hart & Wechsler's The Federal Courts and the Federal System* 65-67 (5th ed. 2003)); *see Hayburn's Case*, 2 U.S. 408, 409 (1792). Courts do not issue advisory opinions. *Hayburn's Case*, 2 U.S. at 409.

> [T]he implicit policies embodied in Article III . . . impose the rule against advisory opinions. [The rule] implements the separation of powers [and] also recognizes that such suits often are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests.

*Flast v. Cohen*, 392 U.S. 83, 96-97 (1968).

Determination of a proper standard of review depends upon specific facts that establish the legal context. For example, claims of violation of the constitutional right to free exercise of religion can, depending upon the nature of the violation, be tested by different standards.

> [A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531-47 (1993). But a different legal rule may trigger a different standard:

> A law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny.

*Id.*

A determination of the level of constitutional review is a step in resolving a plausible constitutional claim, but Plaintiffs do not cite any authority for their position that declaration of a standard of review itself is a form of relief. This claim, isolated from an actual case or controversy, therefore solicits an advisory opinion beyond the jurisdiction of the Court. Count 4 will be dismissed.

### iii. Count 1

The Governor issued Executive Order 2020-004 in part because of testing that confirmed COVID-19 infections in New Mexico. *See* N.M. Exec. Order No. 2020-004 (March 11, 2020). Plaintiffs allege that the State used polymerase chain reaction ("PCR") tests to identify infections but the tests are inaccurate. [*See* Doc. 4, pp. 67-92]. In Count 1, Plaintiffs seek to enjoin the use of PCR test results as the basis for determining public health responses. [Doc. 4, p. 101].

The Governor declared a public health emergency pursuant to state statute; Plaintiffs do not allege any federal basis in Count 1. Sovereign immunity bars federal courts from enjoining

state officials under state law. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102. *Pennhurst* "held that Article III courts sitting in equity are without authority to remedy a State's or its officers' violations of State law; [the court] may only grant injunctive relief of this type to 'vindicate federal rights. . .'" *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 904-05 (10th Cir. 2017) (emphasis in original). Plaintiffs ask the Court to instruct state officials how to conform their conduct to state law, relief beyond federal district court jurisdiction. Therefore, Count 1 is dismissed without prejudice based on sovereign immunity.

### iv. Count 5

Various Plaintiffs[1] allege that Defendants designated their businesses as "non-essential." [Doc. 4, pp. 16-17]. This designation, at times, limited operational capacities. *See e.g.,* N.M. Public Health Order (May 14, 2021) (Department of Health Secretaries set out a "Red to Green" framework based on counties' specific COVID-19 case levels and, for example, at the highest ("red") level: limited "essential businesses" that are identified as a "retail space" to 25% of the maximum capacity). Plaintiffs allege resulting "Takings Without Just Compensation." [Doc. 4, p. 111].

Courts have identified two categories of regulatory action that are "per se" takings: (1) "where government requires an owner to suffer a permanent physical invasion of her property - however minor," and (2) "regulations that completely deprive an owner of 'all economically beneficial use' of her property." *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 538 (2005) (citing *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992)) (quoted authority and internal alterations omitted). Outside of these categories, when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking may still be found based on "a

---

[1] For example, Saundra Thompson, Kristine and Phillip Blackmans. [*See* Doc. 4, pp. 16-17].

'complex of factors' including (1) the economic impact of the regulation on the claimant, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, and (3) the character of the governmental action." *Murr v. Wisconsin*, 137 S. Ct. 1933, 1942 (2017) (citing *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001), citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). In addition to the traditional takings jurisprudence, relief may be denied based on a doctrine of necessity. *Mugler v. Kansas*, 123 U.S. 623, 668-69 (1887) (A prohibition upon the use of property for purposes that are injurious to the health, morals, or safety of the community, cannot be deemed a taking).

Designation of Plaintiffs' businesses as "non-essential" is not a taking on these facts. Plaintiffs' claim is subject to judicial notice that COVID-19 is a serious and sometimes fatal disease and the public health orders were purportedly enacted for the purposes of stemming the spread of disease and protecting citizens' health and safety. Defendants are immune from liability based on the doctrine of necessity because a prohibition upon the use of property to protect public health cannot be deemed a taking. *See Mulgar*, 123 U.S. at 668-69; *see e.g. Underwood v. City of Starkville*, 538 F. Supp. 3d 667, 680 (D. Miss. 2021); *TJM 64, Inc. v. Harris*, 526 F. Supp. 3d 331, 337 (W.D. Tenn. 2021).

Even if the doctrine of necessity does not apply, Plaintiffs fail the traditional regulatory taking test. As explained above, there are two categories of regulatory action that are "per se" takings. Plaintiffs do not assert a permanent physical invasion of property. Nor do Plaintiffs explain how the designation deprived them of all economically beneficial use of their property. Based on the allegations, Blackmans' business was limited to 25% occupancy and was later shut down on November 16, 2020, to comply with a subsequent public health order. [Doc. 4, p. 17]. No other Plaintiffs specifically allege which public health orders shut down which business during

what timeframe. Even if public health orders closed a physical business location to entry, there are other potential business options such as online instruction classes and modifying the business activity to avoid a specific regulatory effect. *See TJM 64, Inc.*, 526 F. Supp. 3d at 337. ("Other business models remain available to [the plaintiff], including the option to provide curb-side, pick-up or delivery options, to become full-service restaurants, or to use the facilities for non-restaurant purposes.") Because Plaintiffs do not plausibly assert that the public health orders foreclosed all business activity, they fail to state a claim for total loss of economical use. *See Goldblatt v. Town of Hempstead*, 369 U.S. 590, 592 (1962).

Since there is no claim of total loss, the Court analyzes the *Penn Central* factors. *See TJM 64, Inc.*, 526 F. Supp. 3d at 338; *Underwood*, 538 F. Supp. 3d at 680-81. The first *Penn Central* factor weighs in favor of Plaintiffs because it can reasonably be inferred that designation of Plaintiffs' businesses as non-essential will impose restrictions with an economic impact on them. *See TJM 64, Inc.*, 526 F. Supp. 3d at 338. While, with recent experience, businesses now may weigh COVID-19 regulations and their potential investment impact, they are not the type of regulations that Plaintiffs could reasonably have expected when investing pre-pandemic. *See id*. Therefore, the second *Penn Central* factor also weighs in the Plaintiffs' favor.

The third factor, however, overwhelmingly favors the Defendants because the restrictions were temporary, negative and, arguably, promote the common good. Some public health orders had occupancy limitations[2] while others did not.[3] Each only lasted one month. *See e.g.* N.M. Public Health Order (September 15, 2021). Even though COVID-19 is arguably still a pandemic, there is not a public health order in place at the moment. Thus, the public health orders are temporary in nature which favors the Defendants. *See Bimber's Delwood, Inc.* v. James, 496 F. Supp. 3d 760,

---

[2] *See e.g.* N.M. Public Health Order (May 14, 2021).
[3] *See e.g.* N.M. Public Health Order (September 15, 2021).

784 (W.D.N.Y. 2020); *Tennessee Scrap. Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 457 (6th Cir. 2009). Rather than affirmative exploitation, physical invasion or permanent appropriation of plaintiffs' assets, the public health orders were negative limitations setting occupancy limits, etc.; their negative character also weighs in favor of the Defendants. *See Luke's Catering Serv., LLC v. Cuomo*, 485 F. Supp. 3d 369, 386-87 (W.D.N.Y. 2020); *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 375 (2d Cir. 2006). The purpose of the public health orders, to stem a significant health crisis, is clearly a public good. *See TJM 64, Inc.*, 526 F. Supp. 3d at 338. Because the third *Penn Central* factor weighs overwhelmingly in favor of Defendants, the Court finds that Plaintiffs fail to state a regulatory takings claim.

For these reasons, Count 5 is dismissed with prejudice.

### v.  Count 6

Plaintiff Valerie George alleges that her church, Calvary Chapel, was shut down except for remote participation. [Doc. 4, p. 13]. Plaintiff George maintains that the practice of her religion requires social, in-person interaction with other members without masks, [*id.*], and that the public health orders at times required masks and limited mass gatherings. *See e.g.* N.M. Public Health Order (September 15, 2021). She alleges that social interactions with other members without masks – through fellowship, listening to the pastor and participating in the music – are necessary parts of the practice of her religion. [*Id.*]. Plaintiff Marguerite Garner alleges that she cannot congregate, share worship experiences, or sing and read the Bible with others. [*Id.*]. In Count 6, Plaintiffs seek declaratory relief that the restrictions on gatherings at houses of worship are unconstitutional. [*Id.*, p. 112].

The Free Exercise Clause, applied to the States through the Fourteenth Amendment, provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." *Church*

*of Lukumi*, 508 U.S. at 531, 546. A law burdening religious practice that is not neutral nor of general application is subject to strict scrutiny. *Id.* Whenever government regulations treat any comparable secular activity more favorably than religious exercise, they are not neutral and generally applicable, and therefore trigger strict scrutiny. *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021) (per curiam) (citing *Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67-68) (2020)).

Some New Mexico public health orders treated comparable secular activities more favorably than religious exercise. For example, the April 11, 2020, public health order allowed essential businesses 20% occupancy capacity but prohibited mass gatherings in a church, synagogue, mosque or other place of worship. N.M. Public Health Order (April 11, 2020), https://cv.nmhealth.org/wp-content/uploads/2020/04/04_11_20_PHO_Amended.pdf; *see also* Michelle Lujan Grisham (@GovMLG), Twitter (April 11, 2020, 5:15 PM), https://twitter.com/GovMLG/status/1249113771076767744 (The Governor announced via Twitter that houses of worship would no longer be exempt from New Mexico's prohibition of mass gatherings). Bike repair shops were considered essential businesses at the time. *See* Tony Raap, Bike shops riding out virus storm, Santa Fe New Mexican (April 5, 2020), https://www.santafenewmexican.com/news/adventure/bike-shops-riding-out-virus-storm/article_f5c5b7b8-75d1-11ea-9fba-87f099306b93.html. Defendants concede that the public health orders are subject to strict scrutiny in the First Amendment context. [*See* Doc. 28, p. 6, n. 4 ("Defendants still contend that *Jacobson* provides the correct standard of review outside the First Amendment context)]. Taking the allegations as true[4], it is plausible that the Plaintiffs state a freedom of religion claim. Therefore, whether the public health orders survive strict scrutiny is a

---

[4] For instance, Plaintiff George maintains that the practice of her religion requires social, in-person interaction with other members without masks. [*See supra* p. 14].

factual inquiry that cannot be resolved on this Motion.[5] For the above reasons, Plaintiffs alleged a plausible freedom of religion claim, and this Count cannot be dismissed at this stage.

### vi.   Count 7

Plaintiffs allege generally that "[t]he mass gathering prohibition has had a serious effect on political speech as it interfered with political organizing, rallies and meetings leading up to the recent elections. But the right to associate is much broader than gathering for political speech." [Doc. 4, p. 113]. The only possible specific allegation regarding the right is by Plaintiff Pamela McKinley on behalf of her 14-year-old, G.M., who claims deprivation of assembly with other students because the Civil Air Patrol was shut down for violation of the mask mandate. [*See id.*, pp. 11-12]. In Count 7, Plaintiffs seek "Declaratory Relief That the Limitations on Gatherings of People are Unconstitutional." [*Id.*, p. 112].

The First Amendment protects both intimate and expressive associations. *Grace United Methodist Church v. City. of Cheyenne*, 451 F.3d 643, 658 (10th Cir. 2006) (citing *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987)). Expressive association claimants must demonstrate that they are asserting their right to associate for purpose of engaging in First Amendment protected activities, *i.e.*, -- speech, assembly, petition for the redress of grievances, and the exercise of religion. *Id.* Plaintiff McKinley's specific claim is not a plausible claim of interference with First Amendment rights.

---

[5] To satisfy strict scrutiny, Defendants must demonstrate that the public health orders are narrowly tailored to further a compelling government interest. *See Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649 (10th Cir. 2006). In a similar case, Judge Browning considered New Mexico's June 30, 2020, public health order and observed that it was likely not narrowly tailored to preserve religious freedoms. *Legacy Church, Inc. v. Kunkel*, 472, F. Supp. 3d 926, 1048-49 (D.N.M. 2020) ("Whatever means are less restrictive, it is certain that a Public Health Order that permits restaurants and gyms to operate at fifty-percent capacity, while limiting houses of worship to twenty-five percent capacity, has not chosen the least restrictive means possible to safeguard the public health while preserving religious freedoms.").

With a few exceptions, a party to a federal court case can only assert its own rights and cannot raise the claims of right of a third party who is not before the court. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). None of the Plaintiffs allege that they intended to engage in protected First Amendment activity such as speech, petition for the redress of grievance, etc. Nor do they allege any relevant activity[6] for an intimate association claim. Because a party can normally only assert his or her own rights, Plaintiffs lack standing to pursue any freedom of association claim.

Article III standing requires a litigant to establish a concrete and particularized injury that is actual or imminent. *See Driehaus*, 573 U.S. at 158. Plaintiffs generally allege that "[t]he mass gathering prohibition has had a serious effect on political speech as it interfered with political organizing, rallies and meetings leading up to the recent elections …" without specifying which organization, what rallies, and how the public health orders regulate them. [*See* Doc. 4, pp. 112-13]. Without more, Plaintiffs fail to allege a concrete and particularized injury.

Plaintiffs fail to state a plausible freedom of association claim and lack standing to bring the claims of third parties not before the Court. Count 7 is dismissed without prejudice. *See Brereton*, 434 F.3d at 1216 ("Since standing is a jurisdictional mandate, a dismissal with prejudice for lack of standing is inappropriate, and should be corrected to a dismissal without prejudice.").

---

[6] Plaintiffs, in response, argue that the public health orders limited "family Christmas or Thanksgiving celebration with more than 5 people" [Doc. 19, p. 25], however, in the complaint, Plaintiffs only state broadly "[w]e also ask the Court to note unequal application of the law with respect to freedom of assembly as demonstrated in unequal treatment in protests which were allowed in contradistinction to other gatherings, including clubs, churches, family gatherings, and other gatherings which were severely restricted [*sic*]." [Doc. 4, p. 113]. Plaintiffs did not advance the family gathering issue in the amended complaint, and the Court therefore will not consider it in this Motion. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("the nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."). To the extent Plaintiffs included the phrase "family gatherings," it failed because Article III standing requires a litigant to establish a concrete and particularized injury, and Plaintiffs failed to allege which individual Plaintiff intends to do what family gathering, on what date, including how many people, etc.

### vii.   Count 8

In Count 8, Plaintiffs claim harms to the right to interstate travel, the Second Amendment right, and the right to work. [*See* Doc. 4, pp. 113-118]. [7]

### 1.   Interstate Travel

Plaintiff David Steputis claims deprivation of a right to interstate travel caused by the Governor's press release which he interpreted to require him to quarantine for two weeks upon each return to New Mexico from another state. [Doc. 4, p. 22]. Plaintiffs allege violations of "The Freedom of Movement & Interstate Travel." [Doc. 4, pp. 113-15].

The "right to travel" embraces at least three different components: (i) the right of a citizen of one State to enter and to leave another State, (ii) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and (iii) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State. *Saenz v. Roe*, 526 U.S. 489, 498 (1999).

Plaintiffs fail to state a right to travel claim because the government action does not burden any of the three *Saenz* components. As alleged, Plaintiffs are welcome to enter New Mexico subject to the two week quarantine, satisfying component one. Components two and three do not apply since Steputis is a New Mexico citizen whereas those two components pertain to visitors to and travelers who elect to become permanent residents of New Mexico. The fact that Defendants do not distinguish in-state citizens and travelers from restricted states regarding two weeks quarantine is precisely the reason other courts found similar quarantines do not violate the right to

---

[7] Even though Plaintiffs did not label this as a separate count, Plaintiffs allege that "Defendants are infringing on the liberty of citizens under the 5th Amendment's due process clause" because "Defendants are compelling Plaintiff [Susana] Vasquez and other business-owners to become law enforcement officers for the State in enforcing its public health orders." [Doc. 4, pp. 117-18]. Because neither party put forth specific arguments on this issue in the Motion, this unenumerated claim remains.

travel. *See Page v. Cuomo*, 478 F. Supp. 3d 355, 370 (N.D.N.Y. 2020); *Carmichael v. Ige*, 470 F. Supp. 3d 1133, 1145 (D. Haw. July 2, 2020). The same treatment between in-state and out-of-state citizens means that visitors are not treated as unfriendly aliens (component two), and that travelers are treated just like other citizens (component three). Because the asserted quarantine does not burden any of the three *Saenz* components, Plaintiffs fail to state a right to travel claim and this Count is dismissed with prejudice.

### 2.  Second Amendment

Plaintiffs also allege violations of the "Second Amendment, Right to Bear Arms." [Doc. 4, p. 115]. However, none of the named Plaintiffs allege any specific Second Amendment claim. Plaintiffs only say "[g]un stores being declared as a 'non-essential' business were shut down or operation was limited thus infringing upon the right to bear arms" and "[d]uring the business shutdown client's right to bear arms was substantially burdened by the arbitrary and capricious closure of store dealing in arms." [*Id.*].

A party can only assert his or her own rights and cannot raise the claims of right of a third party who is not before the Court. *See Kowalski*, 543 U.S. at 129. Plaintiffs do not cite nor does the Court know any exceptions to the third-party doctrine that allows the Plaintiffs to pursue relief on behalf of gun store owners and gun store clients. Plaintiffs failed to state a plausible Second Amendment claim because no specific named plaintiff alleges that they own a gun store that was shut down or limited or that they were prevented from obtaining a gun because of the restrictions. Plaintiffs, therefore, fail to show standing for Second Amendment claims and the Court, therefore, dismisses this claim without prejudice.

### 3.   Right to Work

Plaintiffs allege that the first confirmed COVID-19 case in the world happened on January 7, 2020, and the first confirmed COVID-19 death happened on January 11, 2020. [Doc. 4, pp. 24-25]. The United States reported its first COVID-19 case in the State of Washington on January 20, 2020, and reported its first death on February 6, 2020. [*Id.*, pp. 25-26]. China put a city on lockdown on January 23, 2020, and the World Health Organization "declared the outbreak of COVID-19 a public health emergency of international concern" on January 30, 2020. [*Id.*, p. 26]. "Alex M. Azar II, Health and Human Services Secretary, declared a public health emergency for the US to aid the nation's healthcare community in responding to COVID-19" on January 31, 2020. [*Id.*]. Defendants issued executive orders and public health orders, beginning on March 11, 2020, that at times required business customers to wear masks and limited business operational capacities. [*See supra* pp. 7-8]. Plaintiffs Saundra Thompson[8], Kristine Blackman and Phillip Blackman[9] are business owners and claim loss of business due to the public health orders' restrictions. [*See* Doc. 4, pp. 16-17]. Plaintiffs Valerie George[10] and Evan Roberts[11] are employees and allege loss of work due to the public health orders' restrictions on their respective employers.

---

[8] Thompson claims loss of income caused by altered shopping trends resulting from the public health orders and the mandate that people do not leave home unless absolutely necessary. [Doc. 4, p. 16].

[9] Blackmans claim economic damage because their business was limited to 25% occupancy and claim that they cannot hold specialty events with less than 25% occupancy. [Doc. 4, p. 17]. They also claim economic damage because they were shut down as a "non-essential business" on November 16, 2020. [*Id.*].

[10] George claims that her employer, Hyatt Regency Tamaya Spa, and her service, licensed massage therapist, are designated as "non-essential" and that she has been deprived of her work and cannot find suitable employment in her field so long as "lockdowns" are in place. [Doc. 4, p. 13].

[11] Roberts claims economic damages because his employer laid him off after it was categorized as "non-essential" under the public health orders. [Doc. 4, p. 15]. He says he resumed half-time work when the business was allowed to reopen with restrictions but was out of work again after a subsequent lockdown. [*Id.*].

[*See id*. pp. 13, 15]. Plaintiffs entitle this count "The Right to Work has been abridged." [Doc. 4, pp. 115-17].

The liberty component of the Fourteenth Amendment's Due Process Clause has been held to protect a generalized due process right to choose one's field of private employment. *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999) (citing *Dent v. West Virginia*, 129 U.S. 114, 121 (1889) and *Truax v. Raich*, 239 U.S. 33, 41 (1915)). It is a right "nevertheless subject to reasonable government regulation." *Conn*, 526 U.S. at 292 (internal citation omitted). It does not invoke heightened scrutiny, and governmental infringement on this right will be presumed to be valid so long as it is rationally related to a legitimate state interest. *Guttman v. Khalsa*, 669 F.3d 1101, 1118 (10th Cir. 2012); *Valdez v. Grisham*, 559 F. Supp. 3d 1161, 1173 (D.N.M. 2021) (internal citation omitted). The right to practice a chosen vocation, moreover, does not mean a right to obtain or continue employment at a particular job. *Lawrence v. Polis*, 505 F. Supp. 3d 1136, 1148 (D. Colo. 2020) (citing *Lenz v. Dewey*, 64 F.3d 547, 551 (10th Cir. 1995); *Wroblewski v. Cty. of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992)).

"To satisfy the rational basis test, the [challenged governmental action] need only be rationally related to a legitimate government purpose." *Power v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004). Rational basis review "is highly deferential toward the government's actions. The burden is on the plaintiff to show the governmental act complained of does not further a legitimate state purpose by rational means." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 772 (10th Cir. 2008). The government's decision "must be upheld if any state of facts either known or which could reasonably be assumed affords support for it. Second-guessing by a court is not allowed." *Powers*, 379 F.3d at 1216-17. Moreover, "rational-basis review does not give courts the option to speculate as to whether some other scheme could have better regulated the evils in question." *Id.* at 1217.

The Court "will not strike down [governmental action] as irrational simply because it may not succeed in bringing about the result it seeks to accomplish, or because the statute's classifications lack razor-sharp precision." *Id.* Nor will the Court "overturn [an order] on the basis that no empirical evidence supports the assumptions underlying the [governmental] choice." *Id.* Indeed, the Court is "not bound by the parties' arguments as to what legitimate state interests the [order] seeks to further," but instead "is obligated to seek out other conceivable reasons for validating a state [order]." *Id.*

Even if Plaintiffs plausibly claim that the public health orders prevented them from choosing their field of employment, they fail the rational basis test. COVID-19 cases and death were reported in the United States and elsewhere in the world before the March 11, 2020, Executive Order. [*See* Doc. 4, pp. 24-26]. The World Health Organization and the United States Department of Health and Human Services recognized COVID-19 as a matter of public health concern. [*See id.*]. China locked a city down [*see id.*], and it is subject to judicial notice that some other states in the United States and some other countries in the rest of the world implemented measures that required business customers to wear masks and limited business operational capacities. COVID-19 is transmittable. Given the confirmed reported cases and death, the measures governments elsewhere in the United States and the rest of the world implemented, and the guidance provided by the World Health Organization and the United States government, it is rational for Defendants to consider the perceived severity of the disease recognized by independent sources and to impose restrictions that limit some contact between people to reduce the spread of a transmittable disease, a legitimate government purpose. Because Plaintiffs fail the rational basis test, this Count will be dismissed.

###### viii.   Count 10

Plaintiffs sue the Governor in her official capacity as well as individually and seek damages "in an amount determined appropriate by the finder of fact pursuant to 42 U.S. Code § 1983." [Doc. 4, pp. 22, 120]. Defendants argue that Plaintiffs' claims for damage against the Governor are barred by qualified immunity, and damages against all other Defendants should be barred by sovereign immunity. [Doc. 8, p. 27]. Plaintiffs clarify that "[d]amages are not being claimed against any official in their official capacity other than the Governor." [Doc. 19, p. 26].

Government officials performing discretionary functions generally are granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 503, 509 (1999). Such an official is entitled to qualified immunity unless there are facts sufficient to show both that the official's alleged conduct violated the law and that the law was clearly established when the alleged violation occurred. *Bruning v. Pixler*, 949 F.2d 352, 356-57 (10th Cir. 1991).

Neither party put forth arguments regarding either of the two qualified immunity prongs. Therefore, qualified immunity analysis is not appropriate at this time, and the Court will not dismiss this count based on qualified immunity.

## IV.   CONCLUSION AND ORDER

For the above reasons, the Court grants Defendants' motion to dismiss in part. It is hereby ordered that counts 1-4, 7, the Second Amendment claim in Count 8, and 9 are dismissed without prejudice. Count 5, the right to interstate travel, and right to work claims in Count 8 are dismissed with prejudice. Count 6, the unenumerated claim in Count 8, and Count 10 survive.

**SO ORDERED.**

JERRY H. RITTER
U.S. MAGISTRATE JUDGE
*Presiding by Consent*